IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMANDA GIBSON, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-770-CVE-FHM |
| | ) | |
| MABREY BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MABREY BANK'S MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Respectfully submitted,

Jo Anne Deaton, OBA #5938
Stephen L. Kirschner, OBA #32033
Rhodes, Hieronymus, Jones, Tucker & Gable,
L.L.C.
P.O. Box 21100
Tulsa, Oklahoma 74121
Phone (918) 582-1173
Facsimile (918) 592-3390
jdeaton@rhodesokla.com
skirschner@rhdoesokla.com
*Attorneys for Defendant, Mabrey Bank*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................................1

STANDARD OF REVIEW ............................................................................................7

ARGUMENT AND AUTHORITIES .................................................................................8

     I.     PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF PREGNANCY
           DISCRIMINATION..................................................................................9

           A.  Qualified Employee/Doing Satisfactory Work ...................................9

           B.  Circumstances Giving Rise to Unlawful Discrimination..................10

     II.  MABREY BANK HAS ESTABLISHED A LEGITIMATE, NONDISCRIMINATORY REASON FOR
           ITS EMPLOYMENT DECISIONS AND PLAINTIFF CANNOT ESTABLISH PRETEXT..........14

           A.  Legitimate, Nondiscriminatory Reasons for Termination ................15

           B.  Pretextual Stage ...............................................................................17

           C.  State Law Claims .............................................................................20

     III. PLAINTIFF HAS FAILED TO REASONABLY MITIGATE HER DAMAGES ........................20

     IV. PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES IN THIS CASE .........................23

CONCLUSION.........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adamson v. Multi Cmty. Diversified Servs.*, 514 F.3d 1136 (10th Cir. 2008) ................................ 9

*Ahmed v. Jazmoz Bourbon St. Café*, 2012 U.S. Dist. LEXIS 143089,
    (W.D. Okla. Oct. 3, 2012)......................................................................................................... 18

*Alexander v. Oklahoma*, 382 F.3d 1206 (10th Cir. 2004)............................................................. 7

*Anderson v. Coors Brewing Co.*, 181 F.3d 1171 (10th Cir. 1999) ................................................ 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................................. 7, 8

*Annett v. Univ. of Kansas,* 371 F. 3d 1233 (10th Cir. 2004)......................................................... 18

*Argo v. Blue Cross & Blue Shield of Kan.*, 452 F.3d 1193 (10th Cir. 2006).............................. 18

*Atchley v. Nordam Grp., Inc.*, 180 F.3d 1143 (10th Cir. 1999) ................................................ 9, 10

*Becerril v. Ease Bronx NAACP Child Dev. Ctr.*, 2009 U.S. Dist. LEXIS 85383,
    (S.D.N.Y. Sept. 17, 2009) (unpublished)................................................................................. 24

*Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264 (10th Cir. 1996) ..................................... 7, 8

*Blazier v. St. John Medical Center*, 2006 U.S. Dist. LEXIS 64607,
    (N.D. Okla. Sept. 7, 2006) ....................................................................................................... 19

*Bolton v. Sprint/United Mgmt. Co.*, 2005 U.S. Dist. LEXIS 43520,
    (D. Kan. Dec. 29, 2005) (unpublished)..................................................................................... 13

*Borchert v. Oklahoma* 2006 U.S. Dist. LEXIS 5786,
    (N.D. Okla. Jan. 30, 2006) (unpublished)................................................................................... 9

*Bullington v. United Airlines, Inc.*, 186 F.3d 1301 (10th Cir. 1999) ..................................... 17, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 7

*EEOC v. Ackerman, Hood & McQueen, Inc.*, 758 F. Supp. 1440 (W.D. Okla. 1991)................. 17

*EEOC v. Goodwill Indus. of Southwest Okla. & N. Tex., Inc.*, 2013 U.S. Dist. LEXIS 140137,
    (W.D. Okla. Sept. 30, 2013) .................................................................................................... 20

*EEOC v. Sandia Corp.*, 639 F.2d 600, (10th Cir. 1980).............................................................. 21

*Forrester v. Apex Remington, Inc.*, 2015 U.S. Dist. LEXIS 42626,
   (N.D. Okla. Apr. 1, 2015) (unpublished) ................................................................. 9

*Furr v. Seagate Tech., Inc.*, 82 F.3d 980 (10th Cir. 1996) ..................................... 12, 17

*Gilbert v. Star Bldg. Sys.*, 1996 U.S. Dist. LEXIS 22435,
   (W.D. Okla. Nov. 15, 1996) (unpublished) ............................................................. 20

*Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998) ................................... 22

*Hanh Ho Tran v. Trs. of the State Colleges in Colo.*, 355 F.3d 1263 (10th Cir. 2004) ............... 18

*Hill v. Bd. of Regents for Okla. City Cmty. College*, 2012 U.S. Dist. LEXIS 52326,
   (W.D. Okla. Apr. 13, 2012) (unpublished) ............................................................. 20

*Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273 (10th Cir. 2010) ................................... 18

*Kolstad v. ADA*, 527 U.S. 526 (U.S. 1999) ............................................................. 23

*Lambert v. Travel Ctrs. of Am.*, 2009 U.S. Dist. LEXIS 106404,
   (D. Colo. Nov. 16, 2009) (unpublished) ............................................................... 23

*Levy v. Tharrington*, 62 P.2d 641 (Okla. 1936) ....................................................... 21

*Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................... 7, 8

*McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205 (10th Cir. 2000) .............................. 21

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................. 9

*Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997) .............................................. 18

*O'Hara v. St. Francis Hosp.*, 917 F. Supp. 1523 (N.D. Okla. 1995) ............................... 9, 15

*Orr v. City of Albuquerque*, 417 F.3d 1144 (10th Cir. 2005) ........................................ 14

*P.S. v. Farm, Inc.*, 658 F. Supp. 2d 1281 (D. Kan. 2009) ........................................... 23

*Pastran v. K-Mart Corp.*, 210 F.3d 1201 (10th Cir. 2000) ........................................... 18

*Payne v. Security Sav. & Loan Ass'n, F.A.*, 924 F.2d 109 (7th Cir. 1991) ........................... 21

*Perry v. St. Joseph Reg'l Med. Ctr*, 110 Fed. Appx. 63 (10th Cir. 2004) ............................ 13

*Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995) ............................................. 17

iii

*Rios v. Bigler*, 847 F. Supp. 1538 (D. Kan. 1994) ........................................................ 23

*Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52 (1st Cir. 2005) .......................... 22

*Selenke v. Med. Imagining of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (unpublished) ......... 19

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993) ................................................ 15

*Stockard v. Red Eagle Resources Corp.*, 1992 U.S. App. LEXIS 17699
    (10th Cir. July 27, 1992) (unpublished) ..................................................... 21

*Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) ................................. 15, 17

*Tran v. Sonic Industries Services, Inc*., 767 F. Supp. 2d 1217 (W.D. Okla. 2011) ..................... 18

*Valdivia v. University of Kan. Med. Ctr.*, 24 F. Supp. 2d 1169 (D. Kan. 1998) .......................... 12

*West v. Nabors Drilling USA, Inc*., 330 F.3d 379 (5th Cir. 2003) ................................. 22

*Young v. Cobe Lab.*, 1998 U.S. App. LEXIS 7592,
    (10th Cir. Apr. 17, 1998) (unpublished) ..................................................... 12

**Statutes**
42 U.S.C. § 1981a(b) .......................................................................... 23

**Rules**
FED. R. CIV. P. 56 ............................................................................. 7

COMES NOW the Defendant, Mabrey Bank ("Mabrey Bank" or "the Bank"), and moves this Court to grant summary judgment in Mabrey Bank's favor on all of Plaintiff Amanda Gibson's claims.  In support of this Motion for Summary Judgment, Mabrey Bank shows the Court as follows:

## INTRODUCTION

Mabrey Bank terminated Plaintiff, Amanda Gibson ("Plaintiff"), due to performance issues, punctuality issues, and lack of commitment to the Bank. The undisputed facts show Mabrey Bank provided Plaintiff multiple opportunities to improve her performance, but she continued to have issues succeeding in her position.  Plaintiff alleges in this lawsuit that Mabrey Bank terminated her due to her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C §2000e, *et seq*., and in violation of Oklahoma public policy. As Mabrey Bank will demonstrate below, however, Mabrey Bank is a female-friendly employer which does not penalize its female employees who become pregnant.  Rather, Mabrey Bank frequently promotes women when they are pregnant or after they return from maternity leave.  Based upon the undisputed material facts and the applicable law, Mabrey Bank is entitled to summary judgment on all claims asserted by Plaintiff.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Plaintiff began her employment with Mabrey Bank on or about April 1, 2013.  *See* Branch Manager Position Description, Exhibit 1.

2.      During her initial interview with Mabrey Bank, Plaintiff was advised Branch Managers typically work 8:00 a.m. to 5:00 p.m., with some flexibility to work a schedule of 8:00 a.m. to 4:30 p.m. or 8:30 a.m. to 5:00 p.m. *See* Depo. of Valarie Land, 40:11–41:22, Exhibit 2.[1] Plaintiff indicated in the interview that a past job had required her to start work at 7:00 a.m.  *See*

---

[1] All excerpts from Ms. Land's deposition referenced in this Motion are included in Exhibit 2.

Exhibit 2, 40:20-41:1.  Plaintiff did not object to these hours or state they would be unacceptable. *See* Exhibit 2, 60:25–61:22.

3.      Mabrey Bank employs a high number of female employees. *See* Depo. of Plaintiff,  27:4–19, Exhibit 3.[2]  Numerous female employees have become pregnant and were promoted by Ms. Land during their employment at Mabrey Bank. For example, Kristen Cox, became pregnant while serving as Plaintiff's Assistant Branch Manager.  *See* Exhibit 2, 164:24–165:7; 193:8-19; Depo. of Kendall Mullen (Human Resources, Assistant Vice-President), 11:17-12:1; 62:7-24, Exhibit 4.[3]

4.      Stacy King served as the Bixby Branch Manager before she became pregnant, and Ms. Land promoted her after she returned to work.  *See* Exhibit 2, 165:8–166:8; 193:8-19. Mabrey Bank employee Jaelyn Scribner became pregnant and Ms. Land promoted her from full-time teller to Branch Services Representative.  *See* Exhibit 2, 163:5–164:23; 193:8-19.  Mabrey Bank employee Randi Murphy also became pregnant and received a promotion during Plaintiff's employment.  *See* Exhibit 2, 163:5–164:2; 193:8-19.

5.      During her first few months at Mabrey Bank, Plaintiff was performing at a satisfactory level. Ms. Land met with Plaintiff for her ninety-day Performance Review on July 15, 2013.  *See* Exhibit 2, 94:18–20. In the Areas Needing Improvement section, Ms. Land wanted Plaintiff to continue expanding the customer base and implementing weekly sales meetings with staff. *See* Ninety-day Review, Exhibit 5; Exhibit 2, 95:3–96:5.

6.      After that Review, Ms. Land generally appeared at the Broken Arrow Branch for monthly visits.  *See* Exhibit 2, 99:22–25. During these visits, Ms. Land provided Plaintiff with feedback on her performance. *See* Exhibit 2, 100:24–101:6.

---

[2] All excerpts from Plaintiff's deposition referenced in this Motion are included in Exhibit 3.
[3] All excerpts from Ms. Mullen's deposition referenced in this Motion are included in Exhibit 4.

7.      In October 2013, the Executive Management team created an action plan for the Broken Arrow Branch "in order to place a priority and a focus on increasing growth opportunities for that branch."  *See* Exhibit 2, 103:14–25; Broken Arrow Action Plan ("Action Plan"), Exhibit 6.  Plaintiff was to expand the customer base and focus on opening new accounts.  Exhibit 2, 104:18–105:3.

8.      Plaintiff received her Annual Performance Review on December 16, 2013.  *See* Annual Performance Review ("Annual Review"), Exhibit 7; Exhibit 2, 118:2–8. Ms. Land noted Plaintiff should improve upon responding "in a timely manner to voicemail and email requests and communication from Human Resources and Retail Operations."  She was also encouraged to increase her recording of sales calls and activities.  *See* Exhibit 7; Exhibit 2, 130:6–131:2.

9.      In January 2014, Joe Mann, Senior Vice President for Mabrey Bank, made Ms. Land aware of three specific instances where customers made complaints directly to him regarding issues with Plaintiff's performance.  *See* Exhibit 2, 136:13–21; Depo. of Joe Mann, 28:15-34:17, Exhibit 8.[4]  Ms. Land had a face-to-face discussion with Plaintiff about the best way to handle these customer situations in the future. *See* Exhibit 2, 138:3–14.  Plaintiff was aware of these issues.  *See* Exhibit 3, 85:12-21.

10.      Also in January 2014, Ms. Land noticed a decline in Plaintiff's performance in executing the Action Plan.  Plaintiff failed to meet the minimum calls and contacts as outlined for increasing the customer base.  *See* Exhibit 2, 105:25–106:6; 108:22–109:4. Ms. Land requested Plaintiff attend additional training sessions for use of the "Connections" system, a program the Bank used to track new sales opportunities, "because there were no entries being made." *See* Exhibit 2, 115:25–116:4; 117:16–22; Exhibit 3, 111:7–113:3.

---

[4] All excerpts from Mr. Mann's deposition referenced in this Motion are included in Exhibit 8.

11.     In early 2014, during an interview Ms. Land and Plaintiff conducted with an Assistant Manager candidate, Ms. Land first became aware of Plaintiff's punctuality issues. *See* Exhibit 2, 140:5–10. Plaintiff indicated she came in at 9:00 a.m. and would leave somewhere between 4:00 and 5:00 p.m. *See* Exhibit 2, 140:13–16. On February 13, 2014, Ms. Land had a verbal discussion with Plaintiff, followed by a written One-on-One document, about Ms. Land's expectation that Managers should work the hours of 8:00 a.m. to 5:00 p.m., 8:30 a.m. to 5:00 p.m., or 8:00 a.m. to 4:30 p.m. *See* Exhibit 2, 140:17–141:17; One-on-One Discussion Notes, Exhibit 9; Exhibit 3, 98:19–99:22. Plaintiff acknowledges that, more often than not, she arrived to work between 9:00 a.m. and 9:30 a.m. and worked until 5:00 p.m. or sometimes after. *See* Exhibit 3, 69:2–72:6; 78:19–79:10.

12.     Mabrey Bank's Attendance and Punctuality Policy requires "[r]egular attendance [a]s an essential condition of employment."  Attendance and Punctuality Policy, p. 1, Exhibit 10. Mabrey Bank recognized absences occur in the normal course of employment but expects and requires "[p]rompt arrival at the Bank." *See* Exhibit 10.  Prompt arrival is an important criterion of performance, and failure to meet this requirement could result in termination. *See* Exhibit 10.

13.     Ms. Land did not become aware of Plaintiff's pregnancy until March of 2014. *See* Exhibit 2, 161:16–25. Ms. Land was very happy for Plaintiff. *See* Exhibit 2, 162:11–13. Ms. Land never said anything negative regarding the fact Plaintiff was pregnant.  *See* Exhibit 3, 92:16–93:4.

14.     After continuing to experience the same issues with Plaintiff that had been addressed in February of 2014, Ms. Land issued a Performance Improvement Plan and Counseling Statement to Plaintiff on March 28, 2014. *See* Performance Improvement Plan ("PIP"), Exhibit 11; Counseling Statement, Exhibit 12. The PIP identified three areas of concern,

reflecting the problems with Plaintiff's performance at Mabrey Bank: (1) follow through; (2) initiative; and (3) Branch growth. *See* Exhibit 11; Exhibit 3, 106:25–108:2. In the Counseling Statement, Ms. Land also referenced the February 13, 2014, One-on-One Discussion Notes wherein she expressed concern over Plaintiff's punctuality. *See* Exhibit 12; Exhibit 2, 154:15–22.

15.     Plaintiff first believed Mabrey Bank was "discriminating" against her due to pregnancy on the day Ms. Land placed her on a PIP.  *See* Exhibit 3, 46:11–22. Other than the PIP, nothing happened to Plaintiff during her employment that she believed constituted discrimination. *See* Exhibit 3, 51:23–52:6.

16.     Despite feeling Mabrey Bank had discriminated against her, Plaintiff failed to make any complaints or notify the Human Resources Department.  *See* Exhibit 3, 134:8–137:16. Plaintiff knew Mabrey Bank's employment handbook required employees to report complaints in the workplace.  *See* Exhibit 3, 65:12–66:21.

17.     On April 1, 2014, Plaintiff continued to have punctuality issues. A customer arrived at the Broken Arrow Branch around 9:00 a.m. to retrieve an item from a safety deposit box. *See* Exhibit 2, 151:3–15. A newly hired Assistant Manager had not been trained how to handle this customer request and Plaintiff was not present to assist the customer. *See* Exhibit 2, 151:3–15. Ms. Land spoke to Plaintiff again about how her failure to arrive at work on time negatively impacted the customer. *See* Exhibit 2, 151:3–15. Plaintiff never told Ms. Land she would be arriving late that day.  *See* Exhibit 2, 152:10–19.

18.     On April 3, 2014, Plaintiff was again late for work.  See Exhibit 2, 176:7–14. Ms. Land stopped by the Broken Arrow Branch for a routine visit and became aware Plaintiff was not present at work.  *See* Exhibit 2, 176:7–14. Plaintiff arrived to work shortly before 9:00 a.m. that

day.  *See* Exhibit 3, 87:17–88:7. She had not made Ms. Land aware she would be late that day, in disregard of Ms. Land's specific requests and reminders that she do so.  *See* Exhibit 2, 176:7–14.

19.     Ms. Land completed a Notice of Termination for Plaintiff's termination on April 3, 2014.  *See* Exhibit 2, 171:15–21; Termination Notice, Exhibit 13. Ms. Land decided to terminate Plaintiff's employment for the following reasons:  (1) customer complaints; (2) failure to arrive at work within the acceptable time periods; (3) failure to notify management when she needed to arrive at work late; (4) failure to complete the minimum requested sales calls; (5) sales calls lacking any substance; and (6) a general "change of attitude toward her job and her job responsibilities." *See* Exhibit 2, 133:22–25, 135:8–136:8, 184:13–24; Exhibit 13; Exhibit 4, 67:6–68:1; 68:19-69:3. During her termination meeting with Plaintiff, Ms. Land also told Plaintiff she felt Plaintiff was not committed to the Bank.  *See* Exhibit 3, 138:5–139:22.

20.     Plaintiff agrees it would be important for Ms. Land to feel her Branch Managers were committed to the Bank, and to their particular Branch.  Plaintiff also agrees if Ms. Land felt Plaintiff was not committed to the Bank, that would be an appropriate reason to terminate Plaintiff's employment.  *See* Exhibit 3, 143:25–144:7, 144:8–21.  Mr. Mann, although not the decision maker, agreed with Ms. Land's decision to terminate Plaintiff's employment based on her lack of punctuality and job performance.  *See* Exhibit 8, 40:7-20; 42:25-43:7; 44:15-46:6.

21.     Plaintiff's pregnancy did not play any part in Ms. Land's decision to terminate Plaintiff's employment.  *See* Exhibit 2, 194:1–4.

22.     Plaintiff never heard Ms. Land make any negative statements toward or regarding anyone who was pregnant, and Ms. Land never gave an impression that she did not like children.  *See* Exhibit 3, 127:19–131:14. Plaintiff never heard any Manager or Supervisor at Mabrey Bank make any negative remarks to or about anyone that was pregnant.  *See* Exhibit 3, 129:5-9.

Mabrey Bank employees congratulated Plaintiff on her pregnancy. *See* Exhibit 3, 129:24-130:7. Plaintiff has no evidence of any such employee being terminated from the Bank due to pregnancy. *See*, Exhibit 3, 156:7–16.

23.     Plaintiff has not worked outside the home since her termination. *See* Exhibit 3, 54:9–24. Her job search efforts consist of looking for a job online for one hour per week. *See* Exhibit 3, 58:10–60:11. Her family dynamics have changed since her termination and she is staying at home with her children at this point. *See* Exhibit 3, 58:2–9.  Plaintiff and her husband have not decided whether she will ever return to full-time employment. *See* Exhibit 3, 54:25– 58:1.

24.     Plaintiff does not claim Mabrey Bank did anything to impair her ability to find another full-time job within the banking industry, other than simply terminating her employment. *See* Exhibit 3, 172:21–175:24.

### STANDARD OF REVIEW

Under FED. R. CIV. P. 56, a party may seek summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264 (10th Cir. 1996)). Summary judgment has long been recognized as an appropriate method of disposing of factually or legally insupportable cases. *See Celotex*, 477 U.S. at 327; *see also Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

A party opposing summary judgment must offer admissible evidence of specific facts sufficient to raise a genuine issue of material fact. *See Biester*, 77 F.3d at 1266. The mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. Likewise, disputes as to irrelevant or unnecessary facts will not defeat a motion for summary judgment. *See id.* The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (citing *Matsushita*, 475 U.S. at 585–86). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249. Based upon this standard, and in light of the undisputed facts, Mabrey Bank is entitled to judgment in its favor as a matter of law on all claims asserted by Plaintiff.

## ARGUMENT AND AUTHORITIES

Plaintiff cannot establish a *prima facie* case for pregnancy discrimination because she was not performing her work as a Branch Manager satisfactorily. As a result, the circumstances of her termination do not give rise to an inference of unlawful discrimination. Alternatively, if this Court finds Plaintiff has met her initial burden, Mabrey Bank can establish legitimate, nondiscriminatory reasons for terminating Plaintiff's employment. Plaintiff cannot show these reasons are pretextual or that Mabrey Bank's actual reasons for the termination were related to her pregnancy. Thus, this Court should grant summary judgment to Mabrey Bank on Plaintiff's federal and state law discrimination claims as a matter of law.

In any event, Plaintiff has not reasonably mitigated her damages. Likewise, Plaintiff cannot show she is entitled to punitive damages in this case. For these reasons, this Court should grant summary judgment on Plaintiff's claims for lost wages and for punitive damages.

I.    **PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF PREGNANCY DISCRIMINATION.**

Plaintiff cannot establish a *prima facie* case of pregnancy discrimination. A plaintiff may establish a *prima facie* case by using either direct evidence of discrimination or the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also O'Hara v. St. Francis Hosp.*, 917 F. Supp. 1523, 1526–27 (N.D. Okla. 1995); *Forrester v. Apex Remington, Inc.*, 2015 U.S. Dist. LEXIS 42626, *8 (N.D. Okla. Apr. 1, 2015) (unpublished) ("A plaintiff may prove gender discrimination through either direct or circumstantial evidence."), Exhibit 14.

In a pregnancy discrimination context, the *McDonnell Douglas* framework requires a plaintiff to show (1) she was pregnant; (2) she was qualified for her position as a Branch Manager *and doing satisfactory work*; (3) she was terminated under circumstances giving rise to an inference of discrimination; and (4) her position remained open or was filled by another person. *See O'Hara*, 917 F. Supp. at 1526–27; *Atchley v. Nordam Grp., Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999); *Borchert v. Oklahoma* 2006 U.S. Dist. LEXIS 5786 (N.D. Okla. Jan. 30, 2006) (unpublished), Exhibit 15. The standard is flexible, however, and the critical inquiry in each case is "whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Adamson v. Multi Cmty. Diversified Servs.*, 514 F.3d 1136, 1150–51 (10th Cir. 2008) (quotations omitted). For purposes of summary judgment, Mabrey Bank's argument is focused on the second and third elements.

### A.      Qualified Employee/Doing Satisfactory Work

Plaintiff was not satisfactorily performing her job as required to establish a *prima facie* case of discrimination.  *See Atchley*, 180 F.3d at 1148. She admits that Mabrey Bank received customer complaints about her.  Ms. Land outlined a number of specific other issues dealing with Plaintiff's job performance – including her failure to satisfactorily implement the Action Plan for the Broken Arrow Branch by making the number and quality of contacts necessary for the Action Plan to succeed.  Fact 9.  In addition, from her initial interview with Mabrey Bank, Plaintiff was aware Branch Managers typically work 8:00 a.m. to 5:00 p.m., with some flexibility to 8:00 a.m. to 4:30 p.m. or 8:30 a.m. to 5:00 p.m.  Fact 2.  Mabrey Bank's Attendance and Punctuality Policy requires "[r]egular attendance [a]s an essential condition of employment."  Fact 12.  Nevertheless, Plaintiff regularly did not arrive at work until between 9:00 a.m. and 9:30 a.m.  Fact 11.

Plaintiff stated in an interview of an Assistant Manager candidate, where Ms. Land was present, that Plaintiff regularly came in at 9:00 a.m. and would leave somewhere between 4:00 and 5:00 p.m."  Fact 11.  She admitted that more often than not, she arrived to work between 9:00 and 9:30 a.m., and worked until 5:00 p.m., although sometimes later.  Fact 11.

Before that interview, Ms. Land was unaware that Plaintiff regularly did not arrive at work before 8:30 a.m., the latest time Ms. Land believed was appropriate for a Branch Manager.  Fact 11.  Shortly after the interview with the Assistant Manager candidate, Ms. Land had a verbal discussion, followed by a written One-on-One document, with Plaintiff reminding her of Ms. Land's expectation that Managers should work the hours of 8:00 a.m. to 5:00 p.m.  Fact 11.[5]

---

[5] Plaintiff will likely argue Ms. Land was aware from the outset of Plaintiff's employment that three days a week she would need to arrive later than 8:30 a.m.  *See* Exhibit 3, 23:6-24:3.  Plaintiff admits that during most weeks it was actually five days a week she did not arrive until 9:00 a.m. or after.  *See* Exhibit 3, 70, 24-71:16; 73:19-74:22.  However, there is no dispute that as of the date of the verbal discussion and One-on-One document, Ms. Land made

On April 1, 2014, a customer arrived at the Broken Arrow Branch around 9:00 a.m. to retrieve an item from a safety deposit box. The newly hired Assistant Manager had not been trained how to handle this customer's request, and, due to her practice of not arriving until after 9:00 a.m., Plaintiff was not present to assist the customer either. Ms. Land again counseled Plaintiff about how her failure to arrive at work in a timely manner negatively impacted customers. Fact 17.

On April 3, 2014, Plaintiff was once again late for work. Ms. Land stopped by the Broken Arrow Branch for a routine visit and noticed Plaintiff was not at work. Plaintiff did not arrive at work until shortly before 9:00 a.m. that day. Fact 18. Even though Ms. Land had specifically asked her just two days before to let her know (by call, text, or email) if she was going to be late, Plaintiff did not do so on April 3, 2014. Fact 18. This showed a complete lack of disregard for the specific instructions she had received from Ms. Land. At that point, Ms. Land felt termination was necessary, since she believed Plaintiff's total disregard of Ms. Land's request showed Plaintiff's lack of commitment to the Bank. Fact 19.

Plaintiff's problems with punctuality caused issues with customers and prevented her from satisfactorily performing her job on numerous occasions. Her failure to work the appropriate hours for a Branch Manager did not set the example the Bank expected from its Branch Managers and also contributed to the other issues for which she was terminated, such as lack of commitment and initiative in executing the Action Plan. Plaintiff was not performing her job in a satisfactory manner, and therefore cannot meet her burden of establishing this element of her *prima facie* case.

---

it clear that Branch Managers, including Plaintiff, should work regular hours, arriving no later than 8:30 a.m. and that Ms. Land expected to be notified if Plaintiff would be arriving later than that. Fact 11.

> A general dispute concerning plaintiff's job performance is not sufficient to establish pretext. *Fallis v. Kerr-McGee Corp*., 944 F.2d 743, 747 (10th Cir. 1991). . . . Therefore, plaintiff's conclusory statements and those of her co-workers regarding her performance, without more, are insufficient to permit a finding of pretext. *Fallis*, 944 F.2d at 747. *See also*, *Anderson v. Baxter Healthcare Corp*., 13 F.3d 1120, 1124 (7th Cir. 1994) ("Mere submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory … does not create a material issue of fact.").

*Young v. Cobe Lab.*, 1998 U.S. App. LEXIS 7592, *11-12 (10th Cir. Apr. 17, 1998) (unpublished), Exhibit 16.  In this case, Plaintiff has nothing, other than her subjective belief, she was performing satisfactorily. "Despite plaintiff's assertion that her performance was satisfactory, 'it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance.'" *Valdivia v. University of Kan. Med. Ctr.*, 24 F. Supp. 2d 1169, 1174-75 (D. Kan. 1998) (quoting *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 987 (10th Cir. 1996)). The documentary evidence establishes that Ms. Land had ongoing issues related to Plaintiff's performance which culminated in Ms. Land's decision to terminate Plaintiff due to her willful disregard of Ms. Land's specific instructions about reporting if she was going to be late.  Plaintiff fails to meet her burden with regard to this element.

**B.      Circumstances Giving Rise to Unlawful Discrimination**

At the *prima facie* stage, Plaintiff must ultimately show her pregnancy gave rise to unlawful discrimination. In the Tenth Circuit, temporal proximity, between the protected action and alleged discrimination, by itself, may not be sufficient evidence to show the circumstances gave rise to unlawful discrimination. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[U]nless the termination is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation.").  Here, the circumstances do not support a finding that mere temporal proximity should be allowed to establish unlawful discrimination.

Plaintiff had a gradual and consistent decrease in her performance level at Mabrey Bank, particularly after she received her annual review.  In January 2014, Ms. Land became aware of three different instances where customers expressed their displeasure with Plaintiff's performance.  Fact 9.  Also in January 2014, Ms. Land noticed a decline in Plaintiff's performance in executing the Action Plan.  Fact 10.  As noted above, Ms. Land then became aware of Plaintiff's punctuality issues in February 2014.  Fact 11.  For these reasons, Ms. Land finally issued a Performance Improvement Plan to Plaintiff on March 28, 2014.  Fact 14.  After yet another incident, just days later where Plaintiff was again late for work without notification, Ms. Land ultimately terminated her employment. These were the specific reasons for Plaintiff's termination.  Facts 18 and 19.

Plaintiff will likely argue that she received favorable comments on a prior performance review.  However, this review occurred before Ms. Land became aware of multiple issues in early 2014.  "Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations." *Bolton v. Sprint/United Mgmt. Co.*, 2005 U.S. Dist. LEXIS 43520, *43-44 (D. Kan. Dec. 29, 2005) (unpublished) (quoting *Perry v. St. Joseph Reg'l Med. Ctr*, 110 Fed. Appx. 63, 68 (10th Cir. 2004)), Exhibit 17.

In further support of Mabrey Bank's position on this element, the Bank employs a high number of female employees, many of whom have become pregnant during their employment at Mabrey Bank and remained employed or were promoted by Ms. Land.  For example, Kristen Cox became pregnant while serving as Plaintiff's Assistant Branch Manager.  Fact 3.  Stacy King served as the Bixby Branch Manager before she became pregnant, and she received a promotion after she returned to work.  Fact 4.  Jaelyn Scribner became pregnant and was

promoted from full-time teller to Branch Services Representative. Randi Murphy also became pregnant during Plaintiff's employment, and there were no negative consequences as a result of her pregnancy. Fact 4.

Although Plaintiff did notify Mabrey Bank of her pregnancy close in time to the issuance of her Performance Improvement Plan and her termination, the Court should not disregard Plaintiff's regular and re-occurring performance issues prior to her March, 2014 announcement about her pregnancy. Also, Mabrey Bank's long history of employing a high number of female employees, respecting their pregnancies, and promoting them during or after their pregnancies indicates Plaintiff's termination did not result from anything other than unsatisfactory job performance. It defies logic to assume Ms. Land would terminate Plaintiff due to her pregnancy, when the undisputed evidence shows Ms. Land promoted four other pregnant female employees at Mabrey Bank during the time Plaintiff worked there.   Plaintiff is unable to provide any evidence of unlawful discrimination. Without more, this Court should not find that the circumstances in this case give rise to unlawful discrimination, based on mere temporal proximity. Accordingly, Plaintiff cannot meet her burden to establish a *prima facie* case to show the circumstances give rise to an inference of discrimination.

## II.   MABREY BANK HAS ESTABLISHED A LEGITIMATE, NONDISCRIMINATORY REASON FOR ITS EMPLOYMENT DECISIONS AND PLAINTIFF CANNOT ESTABLISH PRETEXT.

Should the Court conclude Plaintiff has established a *prima facie* case of discrimination based on her pregnancy, the burden then shifts to Mabrey Bank to articulate some legitimate, nondiscriminatory reason for the challenged employment decision. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). The burden on Mabrey Bank is one of production:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone

else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's *prima facie* case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

*Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56 (1981) (internal citations and footnotes omitted). Ultimately, "Plaintiff must demonstrate 'that the proffered reason was not the true reason for the employment decision,' and that her pregnancy was." *O'Hara*, 917 F. Supp. at 1526–27 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993)).

### A.     Legitimate, Nondiscriminatory Reasons for Termination

Mabrey Bank had multiple legitimate, nondiscriminatory reasons for terminating Plaintiff's employment:

Punctuality: Mabrey Bank's Attendance and Punctuality Policy required "[r]egular attendance [a]s an essential condition of employment." Mabrey Bank recognizes absences occurred in the normal course of employment but expects "[p]rompt arrival at the bank." Prompt arrival is "expected and required" and is "an important criterion of performance." "Failure to meet this requirement could result in termination." Fact 12.

More than ten months into her employment, Ms. Land first became aware that Plaintiff was regularly arriving at work outside of her expected working hours. Fact 11. On February 13, 2014, Ms. Land had a verbal discussion, followed by a written One-on-One document, about her expectation that Managers work the hours of 8:00 a.m. to 5:00 p.m., 8:30 a.m. to 5:00 p.m., or

8:00 a.m. to 4:30 p.m.  Fact 11.  Ms. Land issued Plaintiff a Counseling Statement in connection with her Performance Improvement Plan on March 28, 2013, which discussed the need for punctuality in numerous areas.  Fact 14.  The Counseling Statement referred to the One on One document, which specifically addressed work hours.  Even after receiving this, however, Plaintiff continued to have punctuality issues. On April 1, 2014, Plaintiff was not present at 9:00 a.m. to help a customer with a safety deposit box.  Plaintiff never made Ms. Land aware she would be arriving late that day.  Fact 17.  Ms. Land again spoke to Plaintiff about how her failure to arrive at work on time negatively impacted the customer.  Fact 17.  On April 3, 2014, Plaintiff arrived at work shortly before 9:00 a.m.  She had failed to notify Ms. Land she would be late, in disregard of Ms. Land's specific request and reminder on April 1, 2014 that she do so.  Fact 18.

Commitment/Initiative: Mabrey Bank's executive management team created an action plan in October 2013, for the Broken Arrow Branch in order to place a priority and a focus on increasing growth opportunities for that Branch.  Fact 7.  Plaintiff was expected to expand the customer base and focus on opening new accounts.  Fact 7.  Ms. Land had also asked Plaintiff to improve upon her new sales and implement weekly sales meetings with staff.  Fact 5.

However, Ms. Land noticed that by January 2014, Plaintiff had not made any entries into the "Connections" system, which the Bank used to track progress for the Action Plan.  Fact 10. Plaintiff failed to meet the minimum calls and contacts as outlined for increasing the customer base.  Fact 10.  Ms. Land ultimately asked Plaintiff to complete additional training sessions for the Connections system so she could catch up on her missed work.  Fact 10.  However, Plaintiff's performance still did not meet the minimum standards.  Ms. Land identified Plaintiff's lack of initiative and low Branch growth as two of the three main areas for concern in her Performance Improvement Plan.

Follow-through and customer complaints: During Plaintiff's Annual Performance Review on December 16, 2013, Ms. Land indicated she needed to improve upon responding in a timely manner to voicemail and email requests and communication from Human Resources and Retail Operations.  One of the main areas of concern in Plaintiff's Performance Improvement Plan was her inability to follow through.  Fact 8.  In January 2014, Joe Mann, Senior Vice President for Mabrey Bank, made Ms. Land aware of three specific instances where customers made complaints directly to him regarding issues with Plaintiff's performance.  Fact 9.

Mabrey Bank has met its burden of production by demonstrating legitimate, nondiscriminatory reasons for issuance of the Performance Improvement Plan and Plaintiff's subsequent termination.

### B.    Pretextual Stage

Since Mabrey Bank has articulated legitimate, nondiscriminatory reasons for its actions, Plaintiff is left to show "that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1317 (10th Cir. 1999) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)) (overruled on other grounds).  As noted previously, Mabrey Bank's "burden is solely one of production . . . [It] is not required to persuade the court that it actually was motivated by the asserted reason." *EEOC v. Ackerman, Hood & McQueen, Inc.*, 758 F. Supp. 1440, 1452 (W.D. Okla. 1991) (citing *Burdine*, 450 U.S. at 254).  It is not the role of the court to second-guess the appropriateness of the employer's decision unless there is *competent* evidence of impermissible motives.  *Furr,* 82 F.3d at 986 .

Courts consistently hold summary judgment is appropriate when the employer demonstrates a legitimate, nondiscriminatory reason for its business decision and the employee

fails to present adequate evidence of impermissible discriminatory behavior.  To establish pretext, Plaintiff "must show either that a discriminatory reason more likely motivated" Mabrey Bank or that Mabrey Bank's reason for its decision "is unworthy of credence". *Bullington*, 186 F.3d at 1317. *See also Tran v. Sonic Industries Services, Inc.*, 767 F. Supp. 2d 1217 (W.D. Okla. 2011) (quoting *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010)).  This can be accomplished through "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence". *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).  Evidence consisting of "rank speculation, hearsay, and conclusory allegations" is not sufficient to withstand a motion for summary judgment. *Argo v. Blue Cross & Blue Shield of Kan.*, 452 F.3d 1193, 1203 (10th Cir. 2006). Mere conjecture that Mabrey Bank acted with discriminatory intent is also insufficient to establish pretext. *Annett v. Univ. of Kansas,* 371 F. 3d 1233, 1241 (10th Cir. 2004).

While at the *prima facie* stage, it is possible evidence of temporal proximity may be sufficient to establish discriminatory cause, at the pretextual stage this is not the case. "The temporal proximity between an employee's protected conduct and an adverse employment action 'is not sufficient by itself to raise an issue of fact' regarding pretext." *Hanh Ho Tran v. Trs. of the State Colleges in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004) (quoting *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000)). "Rather, temporal proximity is but one factor to be considered." *Ahmed v. Jazmoz Bourbon St. CafÉ*, 2012 U.S. Dist. LEXIS 143089, *9 (W.D. Okla. Oct. 3, 2012) (unpublished), Exhibit 18.

Here, Plaintiff cannot make a showing of pretext to survive summary judgment. Plaintiff first believed Mabrey Bank was somehow discriminating against her due to pregnancy on the

day Ms. Land placed her on a Performance Improvement Plan.  Fact 15.  Despite her feelings, Plaintiff never made any complaints to the Human Resources Department, even though she knew Mabrey Bank's employment handbook required employees to report such complaints.  Fact 16.

Mabrey Bank's compassion and respect for families and children is evident in the manner in which it treats its female employees.  Mabrey Bank employs a high number of female employees, and no less than four employees were or became pregnant and were promoted by Ms. Land during Plaintiff's short time at the Bank.  Facts 3 and 4.  Ms. Land was very happy for Plaintiff when Plaintiff announced her pregnancy and never said anything negative regarding Plaintiff's pregnancy.  Fact 13.  Nor did Plaintiff ever hear Ms. Land make any negative statements toward or regarding anyone who was pregnant.  Ms. Land never gave the impression that she did not like children.  Fact 22.  Plaintiff is unaware of any Mabrey Bank employees being terminated due to pregnancy, and has no evidence of such an occurrence.  Fact 22.

In short, Plaintiff cannot demonstrate her pregnancy was the actual reason for her termination, rather than the legitimate, nondiscriminatory reasons listed above.  While Plaintiff may disagree with Mabrey Bank's decision to terminate her employment, her unsupported disagreement is not enough.  It is the good faith belief of Mabrey Bank which is the test.  "When assessing a contention of pretext, the Court examines the facts as they appear to the person making the decision to terminate the plaintiff." (internal quotations excluded).  *Blazier v. St. John Medical Center*, 2006 U.S. Dist. LEXIS 64607, *21 (N.D. Okla. Sept. 7, 2006) (quoting *Selenke v. Med. Imagining of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001)) (unpublished), Exhibit 19.  "The Court may not second-guess the business judgment of the employer." *Id.* (quoting *Selenke*, 248 F.3d at 1261).  The undisputed evidence shows Mabrey Bank made a

reasonable business decision to end Plaintiff's employment. Thus, the Court should grant Mabrey Bank's Motion for Summary Judgment in this case as a matter of law.

### C.    State Law Claims

The Court should also grant summary judgment as to Plaintiff's state law claims of wrongful discharge in violation of Oklahoma public policy. *See e.g., EEOC v. Goodwill Indus. of Southwest Okla. & N. Tex., Inc.*, 2013 U.S. Dist. LEXIS 140137, *38–39 (W.D. Okla. Sept. 30, 2013) ("The Court concludes that, for the reasons set forth in connection with [Plaintiff's] Title VII and ADEA claims of discrimination, her state law discrimination claims under the OADA also fail, as there is insufficient evidence to create material factual disputes on which a jury could find in her favor on those claims. Inasmuch as her state claim that her termination violated public policy also rests on these same allegations, it must also fail.") (unpublished) Exhibit 20; *Hill v. Bd. of Regents for Okla. City Cmty. College*, 2012 U.S. Dist. LEXIS 52326, *38 (W.D. Okla. Apr. 13, 2012)  (finding that because "plaintiff failed to provide evidence sufficient to prove he was constructively discharged under Title VII, his state law claim as well") (unpublished), Exhibit 21; *Gilbert v. Star Bldg. Sys.*, 1996 U.S. Dist. LEXIS 22435, *10–11 (W.D. Okla. Nov. 15, 1996) ("Plaintiff's state law claim for violation of public policy is premised on her FMLA and Title VII claims. As those claims have failed on the merits, the court finds that plaintiff's public policy claim fails as well.") (unpublished), Exhibit 22.

### III.    PLAINTIFF HAS FAILED TO REASONABLY MITIGATE HER DAMAGES.

In order to recover lost wages, an employee must make reasonable efforts to mitigate her damages by seeking employment comparable to the job she had with the defendant employer. This is true under both Oklahoma and federal law. "It is the duty of the discharged servant to

make the best use of his time and to mitigate [her] damages by seeking other employment . . . "

*Levy v. Tharrington*, 62 P.2d 641, 642 (Okla. 1936).

> The law governing mitigation of damages is clear: in order to recover lost wages
> for the period following his discharge, [Plaintiff] must demonstrate that [s]he
> unsuccessfully sought suitable or comparable employment with "reasonable
> diligence." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982).

*Payne v. Security Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 110–11 (7th Cir. 1991); *see EEOC v.*

*Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980) ("Unquestionably, wrongfully discharged

claimants have an obligation to use reasonable efforts to mitigate their damages."). While a

claimant is not required to make every effort available to find work and does not have to be

successful in her efforts, the efforts made must be reasonable. *See Sandia Corp.*, 639 F.2d at 627;

*Stockard v. Red Eagle Resources Corp.*, 1992 U.S. App. LEXIS 17699 (10th Cir. July 27, 1992)

(unpublished), Exhibit 23.

The burden lies on the employer to show the "employee did not exercise reasonable

efforts to mitigate damages." *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th

Cir. 2000). Mabrey Bank can satisfy this burden if it establishes "(1) that the damage suffered by

plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff

could have discovered and for which he was qualified; and (2) that plaintiff failed to use

reasonable care and diligence in seeking such a position." *Id.* (quoting *Sandia Corp.*, 639 F.2d at

627).

Courts around the country recognize damages may be reduced or eliminated as a result of

a Plaintiff's failure to mitigate:

> One recognized reason for denying front pay is the plaintiff's failure to mitigate
> damages by seeking comparable employment. This is so because a court cannot
> assess the plaintiff's likely future damages without information on whether the
> plaintiff would have mitigated those damages by obtaining alternative
> employment. [Plaintiff] testified that she applied for a few jobs after her

termination but that these applications did not lead to any opportunities. [Plaintiff's] testimony on this point was, at best, sketchy. In light of this weak testimony and the absence of any other supporting evidence, the district court acted within its discretion by denying [Plaintiff] front pay as overly speculative.

*Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 67 (1st Cir. 2005) (internal citations omitted).

His six months at the temporary agency were just that—temporary. It does not equate to a mitigation of damages because there is no evidence that it followed upon a diligent search for more permanent employment. Further, his participation in a training program under the relevant circumstances does not fulfill his obligation to mitigate. Hence, since [Plaintiff] failed to mitigate his damages, his awards for back and front pay, future health insurance premiums, and future medication costs must be vacated.

*Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (internal citations omitted).

The trial evidence, however, permits only the reasonable finding that [Plaintiff] made no attempts to find substantially equivalent employment after February 15, 1999. [Plaintiff] conceded in his testimony that he did not seek work with any drilling company or any supervisor-type employment with any employer. . . . The trial record shows unmistakably that, apart from obtaining comparatively low-paying work with two companies, [Plaintiff] did not seek any other employment and did not attempt to find substantially equivalent employment. The jury could therefore only have reasonably found that he failed to mitigate his damages after February 15, 1999.

. . . We reverse the award of back pay and, in turn, the award of liquidated damages, and remand for further proceedings.

*West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 394 (5th Cir. 2003).

The question of mitigation can appropriately be decided on summary judgment. In this case, Plaintiff did not devote reasonable efforts to search for re-employment. Plaintiff has not worked outside the home for any employer since her termination from Mabrey Bank. Fact 22. Her efforts in searching for new employment have consisted only of browsing online for posted positions for approximately one hour per week. Fact 23.

By personal choice, Plaintiff has not reasonably mitigated her damages. After her termination, she did not exercise reasonably diligent efforts to find another job.  Searching for a new position merely one hour per week is legally insufficient.  Further, Plaintiff and her family's circumstances changed, making it beneficial for her to stay at home with her children. At the time of her deposition, Plaintiff and her husband had not yet decided whether Plaintiff would return to full-time employment at all.  Fact 23.  Plaintiff's personal choices prevent her from recovering economic damages in this case.

## IV.   PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES IN THIS CASE

This Court may find Plaintiff is not entitled to punitive damages at the summary judgment stage. *See Lambert v. Travel Ctrs. of Am.*, 2009 U.S. Dist. LEXIS 106404, *12 (D. Colo. Nov. 16, 2009) (unpublished), Exhibit 24; *See also P.S. v. Farm, Inc.*, 658 F. Supp. 2d 1281, 1303 (D. Kan. 2009) ("A claim for punitive damages 'survives a motion for summary judgment if a reasonable juror could find from the evidence that the defendant[] acted in a wanton manner by clear and convincing evidence.'") (quoting *Rios v. Bigler*, 847 F. Supp. 1538, 1548 (D. Kan. 1994)). Here, Plaintiff is not entitled to punitive damages because Mabrey Bank's conduct failed to reach the "malice or with reckless indifference" standard.

Punitive damages are available under Title VII when the employer is found to have engaged in "discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b). While a plaintiff must show malice or reckless indifference of an individual employee, this determination does not end the inquiry. *Kolstad v. ADA*, 527 U.S. 526, 539 (U.S. 1999). "The plaintiff must impute liability for punitive damages to [the employer]." *Id.* "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535.

There is no evidence Mabrey Bank engaged in any discriminatory practices with malice or with reckless indifference to an employee's protected rights. If the Court allows Plaintiff's claim to survive the summary judgment stage, any supporting evidence to show discrimination would be greatly outweighed by the substantive evidence of the very positive way Mabrey Bank has treated other pregnant employees in the workplace. Mabrey Bank's history of promoting women during and after returning from their pregnancies shows there is no malice or reckless disregard for the rights of pregnant employees. Nor does malice or recklessness exist in Plaintiff's situation.

Outside of temporal proximity, Plaintiff cannot show any evidence of discrimination, much less discrimination that rises to a level sufficient to support punitive damages. Indeed, Mabrey Bank has found no controlling cases where punitive damages were permitted only through evidence of temporal proximity. *See Becerril v. Ease Bronx NAACP Child Dev. Ctr.*, 2009 U.S. Dist. LEXIS 85383, *9 (S.D.N.Y. Sept. 17, 2009) (unpublished), ("Here, the temporal proximity between [Plaintiff's] request for a restricted workload and her termination as well as [Defendant's] visible annoyance at [Plaintiff's] request are evidence of intentional discrimination; but that behavior is not evidence that the [Defendant] intentionally acted in violation of federal law. [Plaintiff] is not entitled to punitive damages because she failed to produce evidence of either egregious discriminatory actions or reckless indifference to the law."), Exhibit 25.

Nevertheless, the inquiry does not end with a mere showing of malice or reckless indifference. Plaintiff must show Mabrey Bank, as an organization, acted with the required state of mind as it pertains to its knowledge that Mabrey Bank may have been acting in violation of federal law. Plaintiff has no such evidence and cannot make this showing based on temporal

proximity alone. Thus, this Court, should grant Mabrey Bank's summary judgment as to Plaintiff's punitive damages claim.

### CONCLUSION

Based upon the undisputed facts and the applicable law, Defendant, Mabrey Bank, requests the Court to grant this Motion for Summary Judgment on all of Plaintiff's claims against Mabrey Bank, and for such other relief the Court deems appropriate.

Respectfully submitted,

/s/Jo Anne Deaton
Jo Anne Deaton, OBA #5938
Stephen L. Kirschner, OBA #32033
Rhodes, Hieronymus, Jones,
Tucker & Gable, P.L.L.C.
P.O. Box 21100
Tulsa, Oklahoma 74121
Phone (918) 582-1173
Facsimile (918) 592-3390
jdeaton@rhodesokla.com
skirschner@rhdoesokla.com
***Attorneys for Defendant, Mabrey Bank***

## CERTIFICATE OF MAILING

I hereby certify that on the 17th day of July, 2015, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Gary L. Richardson
Charles L. Richardson
Melissa A. East
***Attorneys for Plaintiff***

/s/Jo Anne Deaton
Jo Anne Deaton